HARTZ, Circuit Judge,
dissenting:
I respectfully dissent. Although I agree with the majority opinion that our decision in United States v. King, 422 F.3d 1055 (10th Cir.2005), compels the conclusion that Mr. Silva’s burglary offense was a violent felony under 18 U.S.C. § 924(e) (the ACCA), I do not agree that his aggravated-assault offense was a violent felony. Because Mr. Silva did not have three prior convictions for violent felonies, the ACCA did not subject him to a mandatory minimum 15-year sentence.
The majority opinion concludes that Mr. Silva’s aggravated-assault offense was a violent felony because it had “as an ele *675 ment the use, attempted use, or threatened use of physical force against the person of another.” 18 U.S.C. § 924(e)(2)(B)(i). But my analysis of this language quoted from the ACCA and of the elements of the New Mexico offense leads me to the contrary conclusion.
Mr. Silva was convicted of “unlawfully assaulting or striking at another with a deadly weapon.” N.M. Stat. Ann. § 30-3-2(A) (1978). All agree that the relevant statutory definition of assault is “any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery.” Id. § 30-3-1. As I understand New Mexico law, one can be guilty of assault (including assault with a deadly weapon) if one causes the victim reasonably to believe that he or she is about to be battered, even if one does not intend to create that belief. For example, a person who intentionally handles a weapon in a manner that induces a fear of battery can be guilty of assault even if he merely wants to show off his dexterity in handling the weapon, without any interest in inducing fear. This feature of the New Mexico crime of assault is significant because, as I understand the precedents of the Supreme Court and this circuit, an offense does not have “as an element the threatened use of physical force against the person of another” unless an element of the offense is that the offender intend that the victim feel threatened. I will first discuss the meaning of the ACCA, and then the New Mexico statute.
The ACCA issue before us is whether an offense “has as an element the ... threatened use of physical force against the person of another,” 18 U.S.C. § 924(e)(2)(B)(i), if the offense can be committed without the offender’s having an intent to batter or to induce fear in another person. The government points out that § 924(e)(2)(B)(i) does not explicitly require an intent to cause harm or fear. The words knowingly, willfully, intentionally, and the like are absent from the statutory language. But as the Supreme Court observed in Leocal v. Ashcroft, 543 U.S. 1, 9, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), in ordinary parlance one does not accidentally or inadvertently use physical force against something. Leocal was a lawful permanent resident of the United States who had been ruled deportable because he had committed a crime of violence as defined in 18 U.S.C. § 16(a). Employing language that is in all relevant respects identical to that in the ACCA, that statute defines a crime of violence to include “an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.” 18 U.S.C. § 16(a). Leocal argued that his driving-under-the-influence (DUI) offense was not a crime of violence because it did not require any intent to use force. See Leocal, 543 U.S. at 9, 125 S.Ct. 377. The Supreme Court agreed. It said that the phrase use physical force against implied “a higher degree of intent than negligent or merely accidental conduct.” Id. The Court explained:
[I]t is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would “use physical force against” another when pushing him; however, we would not ordinarily say a person “uses physical force against” another by stumbling and falling into him.
Id. (brackets and ellipses omitted). Notably, the intent that was important in that case was the intent to use force. The act of driving that underlay the DUI conviction was undoubtedly intentional, but the intent to drive did not suffice.
This court followed Leocal in United States v. Zuniga-Soto, 527 F.3d 1110 (10th *676 Cir.2008), which interpreted the same language in § 2L1.2 of the United States Sentencing Guidelines. The issue in that case was whether Zuniga-Soto’s prior Texas conviction for assaulting a public servant was a “crime of violence” under the sentencing guidelines. See id. at 1117. The guidelines’ definition of crime of violence differs somewhat from the ACCA definition of violent felony, but it includes a residual clause that is essentially identical to § 924(e)(2)(B)(i): “any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.” USSG § 2L1.2 emt. n.1(B)iii).[1] Under Texas law Zuniga-Soto’s offense could be committed by either intentionally, knowingly, or recklessly causing bodily injury to a public servant. See id. at 1121-22. We held that mere “recklessness does not satisfy [the] use of physical force requirement under § 2L1.2’s definition of ‘crime of violence.’ ” Id. at 1124. Because Zuniga-Soto could have been convicted even if found to have acted only recklessly (and not intentionally) in assaulting the public servant, “the ‘use of physical force’ was not an element of the offense of conviction.” Id. at 1125 (ellipsis omitted). Of course, even one who acts recklessly intends certain actions— such as pulling a trigger, driving a car, or raising an arm; but it is causing bodily injury that must be intended if the offense is to satisfy the ACCA.
To be sure, neither Leocal nor ZunigaSoto is an ACCA case; but the language they interpreted is indistinguishable from the ACCA language before us. They are persuasive authority. See United States v. Williams, 559 F.3d 1143, 1147 n. 7 (10th Cir.2009) (noting that in interpreting the ACCA and the guidelines, we have looked to cases construing similar language in other provisions). And because they establish that “the use of physical force against the person of another” requires an intent to use force against another, I would conclude that “the threatened use of physical force against the person of another,” likewise requires an intentional threat— that is, conduct performed with an intent to induce fear of a battery or to commit a battery. It would be passing strange to say that the term violent felony encompasses the application of physical force only if the offender intends to apply the force, but it encompasses acts inducing fear of the application of physical force even when there is no intent to injure or frighten. Inducing the fear of a battery by intentional acts (such as driving a car or firing a weapon) that are not intended to induce fear or to hurt someone does not suffice under the ACCA any more than does applying physical force against another person by intentional acts (such as driving a car or firing a weapon) that are not intended to apply physical force against another person.
I do not read United States v. Hernandez, 568 F.3d 827 (10th Cir.2009), as saying anything to the contrary. That opinion did not address the New Mexico statute at issue here, but a Texas crime of “knowingly discharging] a firearm at or in the direction of [a named person].” Id. at 829 *677 (internal quotation marks omitted). The court never opined on whether an offense could be a violent felony under the ACCA in the absence of an intent to injure or to induce fear. Rather, quoting a Fifth Circuit opinion addressing the same Texas statute, it said, “ ‘[I]t is unreasonable to conclude that the purposeful discharge of [a firearm] in the direction of a person would not import a communicated intent to inflict physical or other harm.’ ” Id. at 830 (quoting United States v. Hernandez-Rodriguez, 467 F.3d 492, 495 (5th Cir.2006)) (emphasis added; alterations omitted). As I shall explain, such an intent is not required under the New Mexico statute.
If the issue before us in this case had been before the court in Hernandez, one would have expected that opinion to address the Supreme Court’s decision in Leo-cal and this circuit’s discussion of intent in Zuniga-Soto. But Hernandez includes no mention of Leocal, and it cites ZunigcirSoto only for a totally different point. The majority opinion is correct that Hernandez rejected the defendant’s argument that the Texas crime failed to qualify as a violent felony under the ACCA because “it d[id] not ... require an intent to injure or kill.” 568 F.3d at 831. But, as becomes clear from reading the quoted language in context, Hernandez’s reason for rejecting the argument was that an offense could be a violent felony if there was an intentional threat, even if there was no “intent to injure or kill.” The paragraph from which the quoted language is taken ends with a sentence citing circuit precedent in which “[w]e found that knowingly placing someone in fear by the use of a deadly weapon constitutes threatening someone, and easily satisfies the requirement of the threatened use of physical force against the person of another.” Id. (internal quotation marks omitted). And the next paragraph begins with a sentence that states that an intent to induce fear is enough: “Following Hernandez’s logic, however, we should not have deemed that conviction a violent felony unless the statute contained some requirement of an intent to injure or kill, rather than simply the intent to undertake the proscribed action — to place a person in fear.” Id. at 832. Hernandez summed up by saying that even if one can intentionally induce fear without intending to injure, the Texas crime still met the requirements to be a violent felony.
Even if we were to assume that it is possible to knowingly place someone in fear by the use of a deadly weapon without actually intending to injure that person, and that it is possible that one could knowingly discharge a firearm at or in the direction of an individual without actually intending to injure him, both statutes still involve the purposeful threatened use of physical force against the person of another.
Id. (emphasis added). If I thought that Hernandez had already decided the issue before us, I would comply with circuit precedent. But I am confident that it did not.
Turning now to the applicable New Mexico law, the leading New Mexico aggravated-assault decision is State v. Manus, 93 N.M. 95, 597 P.2d 280 (1979), overruled on other grounds by Sells v. State, 98 N.M. 786, 653 P.2d 162 (1982). A police officer arrested Manus’s wife for traffic violations and placed her in a police car parked in front of the Manuses’ home. A bystander stopped her vehicle behind the police car to report an accident to the arresting officer. As the bystander and the officer were filling out an accident report, Manus approached the vehicles with a loaded shotgun, fired twice, and killed the officer. See id. at 283, 653 P.2d 162. He was convicted not only of first-degree murder of the officer, but also of *678 aggravated assault of the bystander. He argued on appeal that there was insufficient evidence of any intentional assault directed at the bystander. See id. at 282, 284, 653 P.2d 162. The court rejected the argument, explaining, “The State was not required to prove that Manus intended to assault” the bystander, “only that he did an unlawful act which caused [the bystander] to reasonably believe that she was in danger of receiving an immediate battery, that the act was done with a deadly weapon, and that it was. done with a general criminal intent.” Id. at 284, 653 P.2d 162. It affirmed the conviction. See id.
Following Manus, the New Mexico opinion most in point is the court of appeals opinion in State v. Morales, 132 N.M. 146, 45 P.3d 406 (2002), written by then Chief Judge Bosson (later Chief Justice of the New Mexico Supreme Court). Morales was convicted of aggravated assault for hitting a police officer with his car when Morales was driving out of a vacant lot. Morales argued that the evidence was insufficient to convict him because he had not intended to hit the officer but was “simply trying to leave the vacant lot.” Id. at 414. The court ruled that the evidence was sufficient because such intent was not required. It explained:
[T]he State was not required to prove that Defendant intended to injure or even frighten [the officer]. Instead, the State was required to prove ... that Defendant’s conduct caused [the officer] to believe Defendant was about to hit him with his vehicle, that a reasonable person in [the officer’s] position would have believed he was about to be hit by the vehicle, and that Defendant’s conduct threatened [the officer’s] safety. [The officer] testified that he thought he was going to be hit by the vehicle and that the vehicle was so close that he could feel it brush his clothes as it went by. This is sufficient evidence to support the conviction.
Id. at 414-15 (emphasis added). Thus, one can violate the New Mexico aggravated-assault statute without intending to injure the victim or even intending to cause the victim to fear injury. Mr. Silva’s aggravated-assault offense is therefore not a violent felony under the ACCA.
The majority opinion is content that the state statute comes under the ACCA because, as the New Mexico Supreme Court wrote in Manus, aggravated assault must be “done with a general criminal intent.” 597 P.2d at 284. But the requirement of “general criminal intent” does not resolve the issue before us. The quoted term is extremely vague and subject to many possible meanings. An unexplained general-intent requirement does not tell us which of the physical acts necessary to commit an offense must be intentional or what result the offender must intend. As Professor LaFave has commented, to say “that a ‘general intent’ is needed ... is often not helpful because of the ambiguity attending that phrase.” 1 Wayne R. La-Fave, Substantive Criminal Law § 5.1(b) (2d ed.2003). This court, too, has noted the imprecision of the term. See United States v. Teague, 443 F.3d 1310, 1319 (10th Cir.2006). In particular, general intent may mean “only the intention to make the bodily movement which constitutes the act which the crime requires.” LaFave, supra, § 5.2(e) (internal quotation marks omitted). This definition is consistent with the New Mexico Uniform Jury Instruction on general intent, which states that “[a] person acts intentionally when he purposely does an act which the law declares to be a crime.” N.M. Uniform Jury Instruction 14-141, NMRA, UJI-Crim. Indeed, the New Mexico Court of Appeals has recently endorsed this definition of the term as stating New Mexico law. See State v. Gonzalez, 137 N.M. 107, 107 P.3d 547, 553 *679 (2005) (citing UJI 14-141 and quoting La-Fave’s definition). Thus, the defendant in Morales could have acted with general intent — by intentionally driving his car out of the vacant lot — without intending to injure or induce fear in the officer whom he was convicted of assaulting. See 45 P.3d at 414-15. But the intent required for an offense to be a violent felony under the ACCA is not satisfied simply because the offender intended to engage in certain bodily movements; the necessary intent is an intent to apply physical force against another person or to induce fear of such force.
To sum up, under the New Mexico Court of Appeals decision in Morales, Mr. Silva’s conviction of aggravated assault could have been based on his driving a vehicle in the direction of the victim even though Mr. Silva had no intent to injure or frighten the victim. I do not think that such an offense is a violent felony under the ACCA.
Perhaps the panel majority believes that the holding in Morales does not accurately state New Mexico law. In my view, however, the court of appeals decision in Morales is reliable authority on the subject, and I see nothing in Morales inconsistent with other New Mexico decisions. Moreover, even if Morales is questionable, that uncertainty does not assist the government. The issue is not whether Mr. Silva should (under properly applied law) have been convicted of aggravated assault if he lacked the intent to harm or to induce fear, but whether he could have been convicted (absent such intent) under the law actually applied in New Mexico courts. I find it significant that when the United States Supreme Court held that attempted burglary under Florida law is a violent felony, it not only considered the Florida Supreme Court’s narrowing construction of Florida’s attempt statute, but added that “Florida’s lower courts appear to have consistently applied this [construction].” James v. United States, 550 U.S. 192, 202-03, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007). The quoted sentence would have been unnecessary if the lower-court applications of the state supreme court decisions were irrelevant.
Accordingly, Mr. Silva’s aggravated-assault offense is not a violent felony under the ACCA, and his sentence must therefore be reversed.

. Crime of violence is defined in full as:
any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.
USSG § 2L1.2 cmt. n.1(B)(iii).